UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| LATONIA SMITH,<br><br>     Plaintiff,<br><br>vs.<br><br>SHERIFF DARIN BALAAM, ISELA BARRERA, and SARA JOHNSON,<br><br>     Defendants. | Case No. 3:22-cv-00539-BLW<br><br>**ORDER ON<br>PENDING MOTIONS** |

    This case was recently reassigned to this Court. No portion of the case will be referred to a United States magistrate judge. The referral to Judge Craig S. Denney is withdrawn. Having reviewing the docket, the Court enters the following Order addressing the pending motions.

    **1. Review of Plaintiff's Motion to Compel**

    Plaintiff alleges that, during her pretrial incarceration in the Washoe County Jail, Sheriff Darin Balaam, Registered Nurse Isela Barrera, and Licensed Practical Nurse Sara Johnson ignored Plaintiff's assertions that the regular jail breakfasts and lunches made her vomit, ignored her requests for liquid not powdered Boost drinks, denied her requests for permission to order food from the Commissary, and prohibited her from ordering food from the "Burger Barn," a nearby restaurant (a privilege some other inmates were afforded)—even though Defendants knew Plaintiff was eating only the standard jail dinners each day (which did *not* make her sick). *See* Amended Complaint, ECF 71.

**ORDER ON PENDING MOTIONS - 1**

When jail medical personnel learned Plaintiff was eating only the dinner meal, they provided her with a medical diet supplement of two powdered Boost drinks per day to help absorption of her prescription antipsychotic medications. Because Plaintiff preferred liquid Boost, which the jail would not provide, she continued to go without nourishment at breakfast and lunch on most days. *See id.*; ECF 64, with exhibits.

As a result, Plaintiff lost approximately 30 pounds (which, Defendants argue, brought her down from a high to a normal Body Mass Index (BMI) figure). *See* ECF 64, 71. Plaintiff alleges that she looked malnourished and often felt like she was starving. She asserts that Defendants ignored her requests because she was Black. She brings Fourteenth Amendment claims of failure to provide an adequate diet, denial of her equal protection rights, and racial discrimination. She asks the Court to compel Defendants to provide additional information that may be relevant to her equal protection and racial discrimination claims. ECF 57.

Federal Rule of Civil Procedure 26(b) allows "[p]arties [to] obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . ." Fed.R.Civ.P. 26(b)(1). "Relevant" is defined as information that is "reasonably calculated to lead to the discovery of admissible evidence, noting that it "need not be admissible at trial." *Id.* Although relevance has a broad meaning, district courts are given broad discretion to apply discovery rules to carry out the purposes of the Federal Rules of Civil Procedure to "secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1.

Motions to compel discovery responses are governed by Federal Rule of Civil

**ORDER ON PENDING MOTIONS - 2**

Procedure 37(a). Other factors must be considered in prisoner litigation settings. For example, "[p]rotecting the privacy of other prisoners and ensuring prison safety are both sufficient reasons to limit discovery." *Beebe v. Andrews*, No. 1:21-CV-00012-SLG, 2022 WL 621782, at *2 (D. Alaska Mar. 3, 2022). Accordingly, "[w]hen discoverable information may give rise to institutional safety and security concerns, courts balance the need for the information and the extent the information compromises security to determine whether disclosure is warranted." *Rogers v. Giurbino*, 288 F.R.D. 469, 480 (S.D. Cal. 2012).

Because the defendants often hold a disproportionate share of the relevant information and prisoners have limited means and access to discovery, the scope of mandatory disclosure in pro se prisoner cases are somewhat broader than that outlined in Federal Rule of Civil Procedure 26(a). All parties are expected to produce information, items, and documents in their possession or control relevant to their own and other parties' claims and defenses. *See* Mandatory Disclosure Order, ECF 21, pp. 2-3.

Here, Plaintiff sought—via a Request for Production—"any and all records including racial demographics of detainees who requested alternative meals and received or [were] denied for the year 2022, at Washoe County Detention Center." ECF 57, p. 1. Defendants produced a list of inmates receiving alternative meals, with the names redacted. Defendants are correct in asserting that they do not have to create a new document in response to a "Request for Production" but produce only what they have, which may be raw data.

**ORDER ON PENDING MOTIONS - 3**

A review of this case shows that the screening judge construed Plaintiff's claims liberally and allowed her to proceed on equal protection and racial discrimination claims notwithstanding the lack of supporting facts in her pleadings. But at this later stage of proceedings, the Court has access to all of the evidence submitted by the parties for summary judgment as it considers whether anything more should be disclosed or produced regarding Plaintiff's equal protection and racial discrimination claims.

The Court agrees with Defendants that the undisputed evidence submitted by all parties reflects that jail medical personnel, in fact, did prescribe a special medical diet for Plaintiff, who was a Black inmate—a powdered Boost drink for breakfast and lunch to help with absorption of her anti-psychotic medications—but she refused it over 100 times because she believed the water in her unit had "particles" in it. *See* ECF 62-2, p. 7. Because Plaintiff's own medical records and medical history at the jail shows that she, a Black inmate, was prescribed a special medical diet, the Court finds no adequate reason to require Defendants to disclose anything further on the question of the racial/ethnic composition of inmates who were and were not approved for medical diets.

As to the medical claims, the Court finds that more information would be helpful to aid in determining the pending motions for summary judgment. *See* Fed. R. Civ. P. 56(e). Defendants should disclose if and how the ingredients of the standard dinners were different from the ingredients of the standard breakfasts and lunches. Plaintiff should also disclose how the ingredients in the Burger Barn meals (and the ingredients in her requested lunch items (peanut butter and jelly, ham and bread, vegetables) were different from the ingredients in the standard breakfasts and lunches.

**ORDER ON PENDING MOTIONS - 4**

In addition, a few other issues related to the equal protection and racial discrimination claims can be clarified by Defendants. Because the claims against the Defendants in Plaintiff's Amended Complaint are narrow, discovery and disclosure likewise should be narrow. It is important to know whether either nurse had a discriminatory intent or motive when she refused to do more to diagnose Plaintiff's alleged gastrointestinal problems. For the time frame from six months prior to the date Plaintiff resided at the jail through the end of Plaintiff's residency there, Defendants should produce (redacted) kites, grievances, employer reprimands, employee reviews, and other information that shows whether Nurse Barrera or Nurse Johnson (1) had been accused of refusing to provide medical diagnostic or other services to inmates because they were Black; or (2) had anything to do with refusing to permit inmates to order commissary or outside vendor food items because the inmates were Black.[1]

If no such information or documents exist as to any of the foregoing, the disclosures should so state.

The Court will order that counsel for the two sets of Defendants (jail and medical) confer to decide which set of Defendants has better access to this information (or whether to collaborate), and then that counsel must produce this information to all other parties.

---

[1] It does not appear that the nurses had authority to dictate who ordered items from the Commissary or outside vendors, but, if the nurses did have authority, or so dictated without authority, that should be disclosed. That is, if Plaintiff was housed in a mental health or other special unit, did either nurse allow other inmates to order supplemental food, but not Plaintiff or other Black inmates the same privileges?

**ORDER ON PENDING MOTIONS - 5**

After their supplemental disclosures, Plaintiff and Defendants shall file a notice of compliance with this Order.

Discovery in this matter—other than the dispute above—is closed. Plaintiff objected to the end of discovery being set for December 4, 2023, *see* ECF 43, 45, 53; however, by that date, this case was a year old. No further discovery will be permitted, except as follows: Should Plaintiff determine that any new disclosures requires follow-up discovery, she shall set forth the discovery that she would like to propound in a "Motion for Additional Discovery," and this Court will review the requests and determine whether they are appropriate. The motion must be based on facts, not speculation.

2. **Plaintiff's Objections to Discovery Order**

Plaintiff objected to the following parts of Judge Denney's Order: (1) requiring discovery to be completed by December 4, 2023, rather than a much longer extension because of pending discovery disputes and the possible need for follow-up discovery; (2) requiring telephonic meet and confer sessions; and (3) denying as irrelevant Plaintiff's Request for Production #8 to Darin Balaam, requesting information as to other instances of racial discrimination during the time he was sheriff from 2019 to 2023. ECF 45, 53.

The Court has addressed above the discovery schedule and a substitute process for the meet-and-confer requirement. To that extent, these objections are sustained.

As to Request for Production #8, Plaintiff asserts that information about whether Sheriff Balaam had a history of racial discrimination against other inmates is relevant to her equal protection and racial discrimination claims against him. However, a prerequisite to its relevance at this stage of the proceedings is showing that Sheriff Balaam

**ORDER ON PENDING MOTIONS - 6**

had notice that Plaintiff claimed she was receiving insufficient food.

The Court agrees that nothing in the record shows that Sheriff Balaam had notice of Plaintiff's meal and health issues. Plaintiff has had over one year to discover evidence showing Balaam's knowledge of, or personal participation in, the alleged constitutional violations.[2] Plaintiff relies only on a grievance she submitted that mentioned she intended to sue Balaam. *See* ECF 67, Exhibit Q, p. 56. However, the grievance itself shows that it was reviewed and responded to by Deputy P. Ryals. Nothing in the record shows it was routed to Balaam. Therefore, there is no causal connection between any other Fourteenth Amendment problems Sheriff Balaam may have had in the past and Plaintiff's allegations about her own treatment at the jail by Balaam. Because § 1983 requires a showing of personal participation, which Plaintiff has not made, it would be a waste of public resources to permit her to seek the type of discovery that is relevant only to defendants who had knowledge of or personal participation in the alleged violation. For these reasons, Plaintiff's Objection will be denied in part as to compelling Sheriff Balaam to

---

[2] By "personal participation," the Court also means the type of supervisory liability addressed in *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). There, the United States Court of Appeals for the Ninth Circuit clarified that a supervisory defendant may be held liable under § 1983 if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id*. at 1207. Allegations sufficient to show a causal connection include: (1) "setting in motion a series of acts by others"; (2) "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failing to act or improperly acting in "the training, supervision, or control of his subordinates"; (4) "acquiesc[ing] in the constitutional deprivation"; or (5) engaging in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1207-08 (internal quotations and punctuation omitted). In addition, "[t]here is no respondeat superior liability under §1983," meaning that a person cannot be sued in their personal capacity merely for being a supervisor. *Id*. The Court has considered this standard and finds that nothing in the record shows it is applicable here, because Sheriff Balaam did not supervise NaphCare (a private entity) nurses, who are the primary actor defendants in this lawsuit.

**ORDER ON PENDING MOTIONS - 7**

respond to Request for Production #8.

### 3. Motion to Seal Documents

Defendants have requested that the Court seal Defendants' Opposition to Plaintiff's Motion for Summary Judgment and all supporting documents. ECF 75, 84. Defendants assert that the confidential nature of Plaintiff's medical records warrant sealing.

There is a strong presumption of public access to judicial records. *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). A party seeking to file documents under seal bears the burden of overcoming that presumption. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana*, 447 F.3d at 1178).

Parties "who seek to maintain the secrecy of documents" are not entitled to a protective order unless they "meet the high threshold of showing that 'compelling reasons' support secrecy." *Kamakana*, 447 F.3d at 1180. Those compelling reasons must outweigh the competing interests of the public in having access to the judicial records and understanding the judicial process. *Id*. at 1178-79; *see also Pintos*, 605 F.3d at 679 & n. 6 (court must weigh "relevant factors," including the public's interest in understanding the judicial process).

In *Bailey v. Wexford Medical Service*, 2014 WL 4541266 (D.Md. Sept. 10, 2014) (unpublished), the United States District Court for the District of Maryland issued a well-

**ORDER ON PENDING MOTIONS - 8**

reasoned decision in a case much like this one. That Court recognized that, even though a privacy interest in the plaintiff's medical records was at stake, the "public's right of access to dispositive motions and the exhibits filed within is protected to an even higher standard by the First Amendment." *Id*. at *5 (citing *Rushford v. New Yorker Magazine, Inc*., 846 F.2d 249, 253 (4th Cir. 1988)). The court further recognized that the public's right to access "extends to a judicial opinion ruling on a summary judgment motion," and that the First Amendment right of access "may be restricted only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'" *Id*. (citing *Doe v. Public Citizen*, 749 F.3d 246, 265-66 (4th Cir. 2014)).

In the *Bailey* case, Defendant Wexford argued that, even though Bailey had placed his medical information at issue in the case, Wexford's motion and its attached exhibits, which included a doctor's affidavit and hundreds of pages of Bailey's medical records, should be shielded from public view. Wexford also argued that the motion and its exhibits "could not be redacted without eviscerating the purpose of the [m]otion" and without harming Wexford's ability to present an adequate defense to Bailey's medical claims. *Id*. at *6.

The Maryland court reasoned and concluded:

> The court agrees that Bailey has placed his medical information at issue by asserting in his complaint that he repeatedly cut his own wrist and then fabricated a story of sexual assault so that he would be taken to a hospital to receive proper medical treatment. The court must therefore look to, and rely on, the medical records surrounding his treatment. But given the quantity of personal medical

**ORDER ON PENDING MOTIONS - 9**

>information in the medical records that is unrelated to the issues in this case, and the fact that this information is scattered throughout the records, Bailey's interest in sealing the full medical records is compelling. In contrast, the factual information referenced in Wexford's memorandum in support of its motion to dismiss or, in the alternative, motion for summary judgment, is inextricably tied to the issues in this case, as is the factual information in Dr. Ottey's affidavit. In order to narrowly tailor the denial of access to serve Bailey's compelling interest in not making public a large amount of medical information unrelated to his claims, the court grants Wexford's motion to seal as to the medical records, but denies the motion as to both Wexford's memorandum in support of its motion to dismiss or, in the alternative, motion for summary judgment, and Dr. Ottey's affidavit.

*Id*.

In this case, the public has a strong interest in detainee civil rights cases against state actor custodians because (1) jails are funded by taxpayer dollars, and (2) detainees' custody must be within the bounds "of dignity, civilized standards, humanity, and decency" important to modern society. *See Estelle v. Gamble*, 429 U.S. 97, 102 (1976). The Court also recognizes that Plaintiff has an interest in keeping her medical records private, and that she should not have to sacrifice all of his privacy rights to bring a civil rights suit alleging unconstitutional government conduct. Therefore, the Court will, in large part, follow the direction of the Maryland district court in balancing the interests of Plaintiff and the public. The Motion to Seal will be granted in part, and denied in part. The medical records and any affidavits will remain under seal, but the motions, memoranda, statements of fact, responses, and replies will be unsealed.

**ORDER ON PENDING MOTIONS - 10**

4. **In Forma Pauperis Payments**

Plaintiff now resides at the Nevada Southern Detention Center, 2190 East Mesquite Avenue, Pahrump, Nevada 89060. The Clerk of Court will be directed to send to the accounting department of that facility a copy of the Order permitting Plaintiff to proceed in forma pauperis, together with correspondence showing how much of the $350 filing fee Plaintiff still owes and requesting withdrawals and remittance of the remainder due to the Clerk of Court in compliance with 28 U.S.C. § 1915(b)(2) (requiring the agency having custody of Plaintiff to send to the Clerk of Court payments from Plaintiff's prison trust (commissary) account each time the amount in the account exceeds $10.00, until the remainder of the statutory filing fee is paid in full).

**ORDER**

**IT IS ORDERED:**

1. Plaintiff's Objection to the Order at ECF 43 (ECF 45) is GRANTED in part and DENIED in part, as set forth above.

2. Plaintiff's Motion for District Court Review of Order at ECF 43 (ECF 46) is GRANTED to the extent set forth herein.

3. Plaintiff's Motion to Extend Time re: Deadlines in Order at ECF 43 (ECF 53) is GRANTED in part and DENIED in part, as set forth herein above.

4. Plaintiff's Motion to Compel (ECF 57) is GRANTED in part and DENIED in part, as set forth herein above. The parties each shall disclose relevant information and/or documents (redacted if necessary) or notify the other parties that none

**ORDER ON PENDING MOTIONS - 11**

exists, within 30 days after entry of this Order. The parties each shall file a notice of compliance.

5. Defendants' Motions to Seal Document (ECF 75, 84) are GRANTED in part and DENIED in part, as set forth above. The Court has reconsidered the sealing of documents in this case and orders the Clerk of Court to seal only the medical records and any affidavits; and to unseal the motions for summary judgment, cross-motions, memoranda, statements of fact, responses, and replies on the docket.

6. Plaintiff's Motion for District Judge Review (re: recusal of Judge Denney) (ECF 81) is GRANTED to the extent that the reference to the magistrate judge has been withdrawn.

7. The Clerk of Court will be directed to send to the accounting department of Plaintiff's new incarceration facility, Nevada Southern Detention Center, 2190 East Mesquite Avenue, Pahrump, Nevada 89060, a copy of the Order permitting Plaintiff to proceed in forma pauperis, together with correspondence showing how much of the $350 filing fee Plaintiff still owes and requesting withdrawals and remittance of the remainder due to the Clerk of Court in compliance with 28 U.S.C. § 1915(b)(2) (requiring the agency having custody of Plaintiff to send to the Clerk of Court payments from Plaintiff's prison trust (commissary) account each time the amount in the account exceeds $10.00, until the remainder of the statutory filing fee is paid in full).

**ORDER ON PENDING MOTIONS - 12**

DATED: February 5, 2024

B. Lynn Winmill
U.S. District Court Judge
DATED: February 5, 2024

B. Lynn Winmill
U.S. District Court Judge