UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

LATONIA SMITH,

    Plaintiff,

vs.

SHERIFF DARIN BALAAM, ISELA
BARRERA and SARA JOHNSON,

    Defendants.

Case No. 3:22-cv-00539-BLW

**MEMORANDUM DECISION
AND ORDER**

Earlier in this prisoner civil rights case filed by Plaintiff Latonia Smith (Plaintiff), the Court granted in part her Motion to Extend Time re: Deadlines and her Motion to Compel Discovery. ECF 90. The Court also ordered the parties to provide certain information to supplement the briefing on all parties' motions for summary judgment. *See* Fed. R. Civ. P. 56(e).[1] *See* ECF 63, 64, 67. Defendants notified the Court that they have complied with the Order regarding supplementation of disclosures and discovery.

---

[1] Plaintiff objects that the Court "created its own narrative" from the record, but the modern-day version of Rule 56 encourages the Court to review the record thoroughly and be proactive in gathering facts and discerning whether material disputes lie for purposes of judicial efficiency. Rule 56 authorizes all of the following: "The court need consider only the cited materials, but it may consider other materials in the record", Fed. R. Civ. P. 56(c)(3); "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact … or (4) issue any other appropriate order", Fed. R. Civ. P. 56(e); and "[a]fter giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute", Fed. R. Civ. P. 56(f).

**MEMORANDUM DECISION AND ORDER - 1**

ECF 96, 97. Plaintiff filed a Reply in support of her summary judgment request, which crossed in the mail with the Court's most recent Order, meaning that it has yet to be considered by the Court. ECF 91, 90.

In response to the Court's most recent Order (ECF 90), Plaintiff says that she does not intend to submit anything further in support of her position on the merits of her claims. ECF 92. However, notwithstanding Plaintiff's refusal to supplement her factual presentation with any new information or exhibits recently obtained, she states that she intends to file an appeal on the basis of judicial error and racial discrimination. ECF 92. In addition, she cryptically notifies the Court and parties that she intends to "seek her own justice when the time is due," which may or may not include causing bodily harm to the parties, their attorneys, the Court, and members of the general public—depending on how Plaintiff's writings, her illustrations, and her submissions of literature are interpreted. *See* ECF 99, 93, 95.[2]

Having reviewed the record, the Court enters the following Order addressing all pending motions, including Defendants' Motion for Sanctions. ECF 98.

---

[2] Plaintiff is serving a prison term for five convictions of 18 U.S.C. § 876(c), Mailing Threatened Communications, a case in which a § 2255 motion is pending. ECF 98, 99; *see* No. 2:19-cr-000304-WQH-VCF, *United States v. Smith*, *affirmed on appeal* (ECF 305 in that case). Plaintiff's mental health history shows an impulse control disorder, schizoaffective disorder, and multiple suicide attempts. *See* ECF 64-1, pp. 86, Exhibit A to Declaration of Chad Couchot. The Court emphasizes that Plaintiff's mental health should be carefully monitored for her sake, as should potential threats against the parties, the Court, and the general public, for their sake.

**MEMORANDUM DECISION AND ORDER - 2**

## REVIEW OF MOTIONS FOR SUMMARY JUDGMENT

### 1. Introduction

This prisoner civil rights case centers on the medical care Plaintiff Latonia Smith received as a pretrial detainee incarcerated at the Washoe County Detention Facility ("WCDF" or "jail"). Complaint and Amended Complaint, ECF 11, 71. Ms. Smith alleges she was denied dietary modifications based on her race, allegedly causing her to become malnourished and emotional distressed. *Id.*

Defendant Sheriff Darin Balaam moves for summary on the grounds that he had no personal knowledge of Plaintiff's claims and no personal participation in her diet or medical care. Defendants Nurse Isela Barrera and Nurse Sarah Johnson move for summary judgment on the grounds that none of Plaintiff's claims are supported by competent evidence, and all of the care she received from Defendants was appropriate and was within the standard of care. ECF 64.

### 2. Summary Judgment Standard of Law

Summary judgment is appropriate where a party can show that, as to a claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

To show that a material fact is not in dispute, a party may cite to particular parts of the record or show that the adverse party is unable to produce admissible evidence to

**MEMORANDUM DECISION AND ORDER - 3**

support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the parties. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

Pro se inmates are exempted "from *strict* compliance with the summary judgment rules," but not "from *all* compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018). At summary judgment, courts "do not focus on the admissibility of the evidence's form," but "on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

The Fourteenth Amendment's Due Process Clause applies to pretrial detainees and is violated when a detainee's conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Pretrial detainees have a due process right to adequate medical and mental health care while detained. *See Sanchez v. Young County, Texas*, 956 F.3d 785, 791-92 (5th Cir. 2020).

Detainee conditions-of-confinement claims are analyzed using an "objective deliberate indifference standard." *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). Under that standard, a detainee must establish the following elements: "(1) The defendant made an intentional decision with respect to [the medical treatment of

the plaintiff]; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 669 (9th Cir.) (quoting *Gordon*, 888 F.3d at 1125), *cert. denied sub nom. San Diego Cnty. v. Sandoval*, 142 S. Ct. 711 (2021). To satisfy the third element, the plaintiff must show that the defendant's actions were "'objectively unreasonable,' which requires a showing of 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id*. (citation omitted). The application of this standard "will necessarily turn on the facts and circumstances of each particular case." *Id*. (internal quotation marks and alteration omitted).

Although the Court uses an objective standard in evaluating conditions-of-confinement claims of pretrial detainees, this standard must not be confused with the objective standard used for evaluating claims of negligence under state law. In a § 1983 setting, negligence—the "mere lack of due care" by a governmental official—"does not 'deprive' an individual of life, liberty, or property under the Fourteenth Amendment." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (citation omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (stating that negligence and ordinary negligence are not actionable under § 1983, because such actions are not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person").

**MEMORANDUM DECISION AND ORDER - 5**

The Fourteenth Amendment's Equal Protection Clause mandates that "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940). An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class. *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001.

In a § 1983 case, a supervisor cannot be held liable for an employee's actions simply because Plaintiff sent him a letter or grievance. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), *cert. denied*, 488 U.S. 898 (1988); *see Sandin v. Connor*, 515 U.S. 472 (1995) (noting that liberty interests are generally limited to freedom from restraint).

Rather, supervisors may be held liable if (1) they had "personal involvement in the constitutional deprivation," or (2) there exists "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (punctuation altered and citation omitted). Allegations sufficient to show a causal connection include: (1) "setting in motion a series of acts by others"; (2) "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failing to act or improperly acting in "the training, supervision, or control of his subordinates"; (4) "acquiesc[ing] in the constitutional deprivation"; or

(5) engaging in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1207-08 (internal citation quotations and punctuation omitted).

In addition, there is no respondeat superior liability under §1983, meaning that a person cannot be sued in their personal capacity merely for being a supervisor. *Id*. at 1207; *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (same).

### 3. Motion for Summary Judgment filed by Defendant Balaam

Nothing in the record shows that Sheriff Balaam had notice of Plaintiff's meal and health complaints. Plaintiff has had over one year to discover evidence showing Balaam's knowledge of, or personal participation in, the alleged constitutional violations. Plaintiff relies only on a grievance she submitted that mentioned she intended to sue Balaam. *See* ECF 67, p. 56, Exhibit Q. However, the grievance itself shows that it was reviewed and responded to by Deputy Patrina Ryals. *Id*. Nothing in the record shows the grievance that was directed to the "legal department" or that it was routed to Balaam. *Id*. Ryals' Declaration states the grievance was not escalated up the chain of command. ECF 62-1, ECF 62-4. In addition, nothing in the record shows that Sheriff Balaam supervised nurses, employed by NaphCare (a private entity providing medical care at the jail), who are the primary actor defendants in this lawsuit. ECF 18, 64-1 (NaphCare medical records).

Therefore, Plaintiff has failed to show that Sheriff Balaam had personal involvement in the alleged constitutional deprivation or that there is a sufficient causal connection between Balaam and the alleged constitutional violation. Because § 1983 requires a showing of personal participation or causation (absent from this record),

Defendant Balaam's Motion for Summary Judgment will be granted. In addition, Balaam is also entitled to summary judgment for the reason that Plaintiff has not shown that her diet or medical care at the jail was constitutionally deficit, as the Court explains below.

**4.  Motion for Summary Judgment filed by Defendant Barrera and Johnson**

Plaintiff's medical records show that, prior to Barrera's and Johnson's interactions with Plaintiff, she was monitored adequately for medical and mental health issues under the Fourteenth Amendment objective deliberate indifference standard. Defendants have produced a medical report of Dr. C. Hsein Chiang, a board-certified family medicine expert who specializes in correctional medicine, who reviewed Plaintiff's medical records and has opined that she was never denied adequate nutrition. *See* ECF 64-10, pp. 17-19. The Court realizes that most prisoners do not have the means to hire their own expert to dispute a doctor's report, but the medical records alone show that no serious medical issue arose as to Plaintiff's diet, but only that Plaintiff gradually lost weight from intermittent fasting, which likely helped with her prediabetic status secondary to her weight and improved her general health. *See id.* (citing Naphcare 137-139, found in Exhibit A to ECF.64 in the record). Dr Chiang also noted that Plaintiff's Albumin level was at the higher end of the normal range at 4.6 g/dl (reference range 3.5-5.2 g/dl), indicating Plaintiff was not suffering from protein malnutrition. *Ibid.*

Dr. Chiang provided information that both the Centers for Disease Control and Prevention (CDC) and the World Health Organization (WHO) use the Body Mass Index (BMI) to define "overweight" and "obesity." *Id.*, p. 18. Dr. Chiang concluded that Plaintiff experienced a gradual weight loss, causing a reduction in her starting BMI of

28.7 to a just-barely normal BMI of 24, according to BMI scale (18.9 to 24.9 is considered healthy/normal) published by the National Institute of Health. *Id*., pp. 16-18.

In this case, Plaintiff has had ample opportunity to obtain facts to support her position. Standard discovery and disclosure were ordered, as is done in all pro se prisoner cases. Plaintiff's motion to compel discovery was granted in part, and Defendants were ordered to produce any racial discrimination complaints from other inmates against the nurses. The Court also ordered Defendants to produce additional information about the ingredients of jail meals, so that Plaintiff could pinpoint why only the jail lunches allegedly made her sick.

Plaintiff surmises, without medical evidence, that she needed a special medical diet—a liquid Boost drink—to supplement her diet for the reason that it would help her avoid malnutrition. The undisputed evidence submitted by all parties reflects that jail medical personnel, in fact, did prescribe a special medical diet for Plaintiff, a powdered Boost drink for breakfast and lunch *to help with absorption of her anti-psychotic medications*, not to prevent malnutrition—but she refused the powdered Boost because she believed the water in her unit had "particles" in it. *See* ECF 62-2, p. 7.

Plaintiff also surmises that, the reason she was not allowed to order the sandwiches of her choice for lunch from the jail kitchen was because the nurses discriminated against her because she is Black. However, because Plaintiff's own medical records and medical history at the jail shows that she, a Black inmate, was prescribed a special medical diet, there is insufficient evidence in the record to show that

**MEMORANDUM DECISION AND ORDER - 9**

the type of medical care received was the result of objective deliberate indifference or racial discrimination, as she contends.

The Court found it important to know whether either nurse had a discriminatory intent or motive when she refused to do something more to diagnose Plaintiff's alleged gastrointestinal problems when Plaintiff requested the liquid Boost or the sandwiches of her choice. The Court ordered Defendants to find and produce from the relevant time frame kites, grievances, employer reprimands, employee reviews, and other information showing Nurse Barrera or Nurse Johnson (1) was accused of refusing to provide medical diagnostic or other services to inmates because they were Black; or (2) had anything to do with refusing to permit inmates to order commissary or outside vendor food items because the inmates were Black. The Court noted that it did not appear that the nurses had authority to dictate who ordered items from the Commissary or outside vendors, but, if the nurses did have authority, or so dictated without authority, Defendants were required to disclose those facts. The Court ordered Defendants to disclose whether, if Plaintiff was housed in a mental health or other special unit, either nurse allowed other inmates to order supplemental food, but did not allow Plaintiff or other Black inmates the same privileges. The Court went the extra step to notify Plaintiff that, if any such evidence was produced, she could request follow-up discovery. In the face of the Court's efforts to provide Plaintiff with what she needed to prove up her claims, she refused to address the presence or absence of any such evidence after her Motion to Compel was granted and she was provided opportunity to supplement her briefing. There is no

evidence in the record that either nurse discriminated against Plaintiff because she is Black.

Reviewing Plaintiff's Reply that crossed in the mail with the Court's Order on the Motion to Compel, the Court finds that Plaintiff asserts that the Court's preliminary analysis about her refusing powdered Boost was incorrect, because: "Ms. Smith's September 7, 2022 request (ECF, Exhibit I to Plaintiff's Cross-Motion) cancelled her preemptive attempt to get liquid boost rather than powdered boost, not her attempts to get boost as illustrated in her several follow-up grievances and requests." ECF 91, p. 2. But Plaintiff's chronological requests show the following:

09/07/2022     Plaintiff: "i dont want powder boost [the water has particles whereim at] so please give me the boost in the bottle at least once a day. i have money in my account if thats needed and my parents add money as needed. if that cant be done then just take the boost away.  (ECF 67, p. 39 (verbatim).)

09/12/2022     Plaintiff: "cancel this request" (*Id.*)

09/12/2022     Defendant Barrera: "Please re-kite for any medical requests." (*Id.*)

10/09/2022     Plaintiff: "i would like to get 1-2 liquid boosts [not the powder] a day. if there is a daily distribution fee it can be taken from my account OR please change my lunch diet to peanut butter/jelly or bologna/ham sandwiches, the chicken/egg/mayonnaise cat food makes me sick. dinner is fine I don't eat breakfast or lunch [for months now] and im withering away" (ECF 67, p. 41.)

10/11/2022     Defendant Barrera: "You do not qualify for boost; this is not a medical request." (*Id.*)

10/12/2022     Plaintiff: "i requested a diet change for my lunch and was told it's not a medical request. like i explained i do not eat breakfast or lunch because I get sick [I've not had the 2 meals for months which has caused me to lose significant weight]. I requested a meal supplement of 1-2 boosts a day OR a change from the meat/egg/mayonnaise sandwiches to peanut butter jelly or bologna/ham or something more

mundane and tolerable to my stomach. how is this not a medical request? please don't tick me off (ECF 67, p. 43.)

10/12/2022   Plaintiff: "and id like a response from someone other than the prick barrerra [sic]" (*Id.*)

10/13/2022   Defendant Johnson: "This is not a medical request; nor is it an appropriate kite. This kite is now closed." (*Id.*)

Examples of Plaintiff's request for a "more mundane and tolerable" diet would include the types of ingredients found in her delivery orders from a nearby restaurant, the Burger Barn, which was food that did not make her sick: one crispy chicken sandwich with tots, six cookies, one ketchup, and one ranch dressing 8/23/2022); one pepperoni and sausage pizza, six cookies and one ranch dressing (8/25/2022); and three orders of a one bacon double rodeo burger with tots, six cookies, and one ketchup (8/29/2022, 9/1/2022, and 9/12/2022). ECF 67, pp. 30-37, Exhibit H to Plaintiff's Cross-Motion.

The Court required Defendants to provide Plaintiffs with information about how the jail lunch menu ingredients (which allegedly made Plaintiff sick) differed from the jail dinner menu ingredients (which allegedly did not make Plaintiff sick). The Court ordered Plaintiff to disclose how the ingredients in the Burger Barn meals (and the ingredients in her requested lunch items (peanut butter and jelly, bologna/ham, bread, and vegetables) were different from the ingredients in the standard lunches. For example, it is unclear how Plaintiff could consume without a gastrointestinal problem a crispy chicken sandwich where there is no indication that she requested the Burger Barn chef to "hold the mayo," and how she could tolerate ranch dressing, a close cousin to mayo, but how she could not eat a chicken sandwich with mayo prepared by the jail kitchen.

**MEMORANDUM DECISION AND ORDER - 12**

Plaintiff disputes that jail staff asked her if she wanted powdered Boost multiple times, as her medical records reflect. Because that fact is disputed, the Court does not rely on it here. Nothing in the record shows that Defendants were required to offer Plaintiff a supplement she said in writing that she did not want, especially because nothing in Plaintiff's medical records showed that there was a medical reason that Plaintiff could not eat the regular jail lunches. Nothing in the record shows that Plaintiff asked jail medical staff to determine the source of her gastrointestinal "sickness," the onset of which occurred solely from consumption of the jail's lunch menu. The medical records show that Plaintiff was not malnourished, but gradually lost weight to arrive at a healthy BMI. Plaintiff declined to respond to the Court's order and explain how what appeared to be preferences of taste actually translated into food allergies, digestive intolerances, or another actual medical issue. Plaintiff refused to give any further explanations, opting instead for submissions filled with incivility and explicit or implicit threats to the parties, their attorneys, the Court, and the general public. The Court is not required to adopt unreasonable inferences from circumstantial evidence, such as Plaintiff's assertions that only the jail lunches made her ill, as opposed to jail dinners or Burger Barn meals, and her suppositions that she was suffering from malnutrition because of her chosen course of intermittent fasting. See *McLaughlin*, 849 F.2d at 1208.

Plaintiff has not shown that either medical Defendant acted in an objectively deliberately indifferent manner to a serious medical need of Plaintiff. The record shows that Plaintiff wrote to the medical unit that she did not want powdered Boost, only liquid Boost, and then Plaintiff said, "Cancel this request." It is unclear whether Plaintiff meant

that she would accept powdered boost, after all, or that she wanted the entire request as to any type of Boost cancelled. Nurse Barrera's response to submit a new medical request if she desired, was entirely appropriate and not objectively deliberately indifferent under these circumstances.

Plaintiff did file a new request, but it restated that she not be given powdered Boost, and it was focused on a complaint about the lunch menu, not a request to help diagnose a medical problem arising from the lunch menu. Without any explanation from Plaintiff about how the ingredients of the lunch menu differed from the dinner menu or the Burger Barn menu, or any pursuit by Plaintiff of a medical diagnosis that the lunch menu was inappropriate for Plaintiff's health, there is no evidence in the record that Nurse Johnson exhibited objective indifference by responding to Plaintiff that her request was not medically-based.

Because, as explained above, Plaintiff was not suffering from malnutrition and was not in danger of becoming malnourished when these Defendants interacted with Plaintiff as to her medical requests, she has failed to show that Defendants' decisions to respond to Plaintiff's complaint as they did placed her at substantial risk of suffering serious harm. Rather, Defendants acted reasonably in response to Plaintiff's requests. For these same reasons, Plaintiff has not shown that these Defendants were the cause of Plaintiff's emotional distress.

For all of the reasons cited above, Defendants Barrera and Johnson are entitled to summary judgment on all of Plaintiff's claims.

**5. Plaintiff's Cross-Motion for Summary Judgment**

For all of the reasons cited above, Plaintiff is not entitled to summary judgment on her claims against Defendant Balaam or Defendants Barrera and Johnson. Plaintiff's Cross-Motion for Summary Judgment will be denied.

## ORDER

**IT IS ORDERED:**

1. The Clerk shall correct the Docket to reflect that Plaintiff's Motion for District Judge Review (re: recusal of Judge Denney) (ECF 81) was GRANTED to the extent that the reference to the magistrate judge has been withdrawn in the Order entered at Docket 90.

2. Defendant Darin Balaam's Motion for Summary Judgment (ECF 62) is GRANTED.

3. Defendants Isela Barrera and Sarah Johnson's Motion for Summary Judgment (ECF 64) is GRANTED.

4. Plaintiff's Cross-Motion for Summary Judgment (ECF 67) is DENIED.

5. Plaintiff's Motion to Grant Defendants' Motion for Summary Judgment (ECF 92) is GRANTED to the extent that the Court has considered it a notice that she does not intend to submit anything further as to the pending Motions but desires the Court to rule on the existing record.

6. This entire case is DISMISSED with prejudice.

7.  Defendants' Motion for Terminating Sanctions for Death Threats by Plaintiff (ECF 98) is DENIED in part because the Court has determined the merits of the Motions for Summary Judgment rather than dismissed this case as a sanction, and because it appears that Plaintiff's mental illness—which may be beyond her control—may be a factor in causing her to act in a less-than-civil manner.

8.  Notice to the United States Court of Appeals for the Ninth Circuit is given that any appeal in this matter would not be taken in good faith, because, in the context of the disclosures and discovery made available to Plaintiff in this case, there are no conceivable non-frivolous arguments that could save Plaintiff's claims against these Defendants from dismissal, and, rather than make any submissions after being provided with additional discovery and disclosures, Plaintiff abandoned the merits of her case in favor of reverting to incivility, accusing the Court of racial bias without specific grounds, and submitting writings and illustrations that reasonably could be construed as implicit or explicit threats of bodily harm to the parties, their attorneys, the Court, and the general public.

9.  Defendants' request for sanctions (contained in ECF 98) is GRANTED in part to the extent that Plaintiff is ordered to act with civility in all matters pending in the United States Courts, which means refraining from name-calling; refraining from accusing others of racism without a specific factual basis; and refraining from submitting any writings and illustrations that reasonably could be construed as implicit or explicit threats of bodily harm to the parties, their attorneys, the Court, and the general public. Plaintiff's violation of this Order may result in sanctions,

up to and including payment of Defendants' costs and/or attorney fees, and

dismissal of any court actions or appeals, including this case.

10. A copy of Plaintiff's recent filings and Defendants' Motion for Sanctions have

been forwarded to the United States Marshal Service in Idaho and Nevada.

11. Defendants and any other persons who believe they are victims of unlawful threats

are free to present their facts and request prosecution by the proper state or federal

authorities, if appropriate. That is not a consideration in this civil case.

DATED: March 15, 2024

B. Lynn Winmill
U.S. District Court Judge